IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHAWN DAVID SENN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:12cv736-TFM |
| ) | (WO) |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.  PROCEDURAL HISTORY**

Plaintiff Shawn David Senn ("Senn") applied for disability benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., and for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, alleging that he is unable to work because of a disability.  His application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ concluded that the plaintiff was not under a "disability" as defined in the Social Security Act and denied the plaintiff's claim for benefits.  The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See  Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social

Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge. The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). Based on the court's review of the record in this case and the parties' briefs, the court concludes that the Commissioner's decision should be REVERSED and REMANDED.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not

---

Security matters were transferred to the Commissioner of Social Security.

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. INTRODUCTION

**A. The ALJ's Decision**

Senn was 33 years old at the time of the hearing and has completed the eighth grade. (R. 46.) He has prior work experience as a construction worker and automobile mechanic.

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

(R. 209.) Senn alleges that he became disabled on January 15, 2010, due to memory loss, headaches, hearing loss, vision problems, and back pain. (R. 49, 216.) After the hearing, the ALJ found that Senn suffers from severe impairments of head trauma, headaches, vision problems, and back pain. (R. 28.) The ALJ found that Senn is unable to perform his past relevant work, but that he retains the residual functional capacity ("RFC") to perform light work. (R. 31.) Testimony from a vocational expert led the ALJ to conclude that a significant number of jobs exist in the national economy that Senn could perform, including work as a bench assembler, garment bagger, and cafeteria attendant. (R. 34.) Accordingly, the ALJ concluded that Senn is not disabled. (*Id.*)

### B. The Plaintiff's Claims

Senn presents the following issues for review:

(1) Whether the vocational expert's inaccurate testimony cannot constitute substantial evidence to support the ALJ's fifth step finding?

(2) Whether the ALJ erred in finding Senn engaged in substantial gainful activity during the entirety of the period at issue?

(3) Whether the ALJ erred in failing to properly consider Senn's hearing loss?

(4) Whether the new and material evidence warrants remand?

(Doc. No. 12, Pl. Br. at 1.)

## IV. DISCUSSION

Senn raises several issues and arguments related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

However, the court pretermits discussion of the plaintiff's specific arguments because the court concludes that the Commissioner erred as a matter of law, and thus, this case is due to be remanded for further proceedings. Specifically, the court finds that the Commissioner failed to consider Senn's hearing loss as a severe impairment and failed to resolve inconsistencies in the medical records regarding memory loss.

Before the date of onset in January 2010, the claimant was involved in a series of unfortunate events. While driving a pickup truck along Highway 30A during a rainstorm on April 8, 2003, Senn was involved in a head-on accident with a garbage truck. (R. 327.) After the accident, Senn complained of ringing in the ears, loss of balance, numbness in both arms, severe headaches, and back pain. (R. 301-02.) On May 28, 2003, Dr. Michael W. Reed, an orthopedic surgeon, assessed cervical disc disease with cervical strain consistent with a work-related injury and prescribed Bextra, an anti-inflammatory medication. (R. 303-04.)

On March 4, 2004, while doing road work in a striping truck on the second day of his new construction job, Senn was involved in a head-on accident with a "pilot" truck. (R. 216, 318, 361.) Senn went through the windshield of his vehicle, hit the asphalt, and lost consciousness. (R. 49, 322, 352.) He remained in the intensive care unit of Flowers Hospital for five or six days. (R. 49.) On March 5, 2004, a CT scan of his head indicated "hematoma of the left side of the scalp with a contra q injury of the right temporal and parietal cortical surface" and "probable edema in the right side of brain with effacement of the right lateral ventricle." (R. 309.) In a March 26, 2004, radiology questionnaire, the

radiologist noted that Senn "still has [headache], cannot hear out of [left] ear, [and] slurred speech." (R. 338.) On April 8, 2004, Senn returned for a follow-up appointment with Dr. Dennis H. Becker, a neurosurgeon, complaining of "poor memory, [decreased] hearing [left] ear, [and] pain [right] eye." (R. 339.) On January 27, 2005, a CT scan indicated "what probably represents mild encephalomalacia/volume loss" and extensive paranasal sinus disease. (R. 454.)

In January 2010, Senn slipped and fell down a flight of snow-covered stairs. (R. 47, 523-24.) On February 25, 2010, Senn went to Flowers Hospital complaining of lower neck pain which began after the fall. (R. 524.) Dr. David Claassen's clinical impression was acute cervical strain. (*Id.*) Upon discharge, Senn was prescribed Robaxin for muscular pain and spasms and Lortab for pain. (*Id.*) On March 1, 2010, Senn went to Southeast Alabama Medical Center complaining of an earache, headaches, and nausea. (R. 384, 388.) Medical personnel noted clear fluid draining from his right ear. (*Id.*) A CT scan indicated "ethmoid and minimal sphenoid sinus inflammatory disease but no skull fracture [] seen." (*Id.*) Upon discharge, Senn received instructions for an adult head injury, in which he was advised:

> You have had a head injury which does not appear serious at this time. A concussion is a state of changed mental ability, usually from a blow to the head
> . . . .

(R. 380.) Senn was also advised that he could experience several minor symptoms after discharge, including difficulties with memory, concentration, and hearing. (*Id.*) Thus, Senn suffered at least three head injuries which affected his ability to hear prior to the January 15, 2010 date of onset.

6

The ALJ did not list hearing loss as a severe impairment. The severity step is a threshold inquiry which allows only "claims based on the most trivial impairment to be rejected." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). Indeed, a severe impairment is one that is more than "a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987) (citing with approval Social Security Ruling 85-28 at 37a).

A physical or mental impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(c). The plaintiff has the "burden of showing that [her] impairments are 'severe' within the meaning of the Act." *McDaniel*, 800 F.2d at 1030-31. Once the plaintiff establishes that he suffers from a severe impairment, the ALJ is not entitled to ignore that evidence.

The evidentiary materials are replete with references to the plaintiff's loss of hearing and auditory problems. (R. 48, 250-51, 255, 301, 338-39, 357-58, 384, 568, 599.) For example, on May 26, 2004, Dr. William J. Knox, an otolarynologist, conducted several hearing tests, including otoacoustic emissions testing which revealed normal hearing in the right ear and a drop of 30 to 40 decibels in the left ear. (R. 357.) Fork testing also indicated conductive hearing loss of the left ear. (R. 358.) Dr. Knox found that "most likely, [Senn] has suffered some degree of labyrinthine and cochlear trauma to the left ear" and

7

recommended additional testing. (*Id.*) In a July 1, 2004, letter to a worker's compensation insurance company for Senn's employer, Dr. Knox stated:

> Sean never returned for his second Audiogram. The first one was felt to be unreliable. At the time of that hearing test though, it did appear that he had normal hearing in at least one ear and a mild to moderate drop in the other ear. He should be able to return to work. He may have difficulty localizing sound due to the damage to the one ear and he probably should not be [in] a position where sound localization is important.

(R. 355.) On March 1, 2010, an emergency room physician's clinical impression was acute otalgia of the right ear. (R. 385.) During an examination at Eye Center South on September 2, 2011, Senn complained of headaches, hearing loss, and an earache. (R. 569.)

The court notes that several medical records and letters were provided to the Appeals Council after the ALJ rendered his decision. Because additional evidence was submitted and considered by the Appeals Council after the ALJ's decision, the proper inquiry is whether the Appeals Council's decision to deny benefits is supported by substantial evidence in the record as a whole. *See Ingram v. Astrue*, 496 F.3d 1252, 1262-64 (11th Cir. 2007). The plaintiff argues that this case should be remanded to the Commissioner because the additional evidence is new and material. Of particular interest is medical documentation indicating that Senn was diagnosed with "moderately severe SNHL in both ears" in January 2011. (R. 599.) The medical evidence before the ALJ indicates Senn was involved in three accidents with head injuries resulting in hearing loss, including a fall down a flight of stairs shortly before the date of onset in January 2010, right ear otalgia in March 2010, and complaints of hearing loss in September 2011; thus, it is arguable that the additional records provided to the

Appeals Council are material in this case. *See Ingram v. Astrue*, 496 F.3d 1253 (11th Cir. 2007). Given Senn's history of head injuries and medical records indicating problems with both the right and left ears throughout the relevant time period, it is arguable that the November 2011 diagnosis of hearing loss in both ears is material to a determination of whether Senn suffered from hearing loss during the relevant time period in this case.

The Commissioner argues that evidence indicating that Senn suffers from hearing loss does not establish a severe impairment because the medical records indicate that a hearing specialist recommended hearing aids and that he "loved" a demonstration of them. (Doc. No. 15, Def's Br. p. 9.) The evidentiary materials indicate Senn is unable to afford treatment. On November 17, 2011, medical personnel at Hearing Associates of Dothan noted:

> [Patient] seen to discuss hearing aids. He was seen in Dr. Charlton's office and has a moderately severe SNHL in both ears. [Patient] was in a car accident and is disabled. He is not able to work and suffers memory loss. He sees Dr. Malik for neurology. Demo of Aleras was performed and patient loved them. He seemed very excited about them. Levels of technology were discussed and patient wanted to proceed with the mid-level. He was quoted $5839.65 for two. He and his wife filled out the Care Credit application but it was denied. They will discuss this with his family and see if a relative will sign as a co-applicant. They will contact us when they are ready to proceed.

(R. 599.) Senn's mother also provided a letter to the Appeals Council stating that her family cannot afford to pay for the hearing aids. (R. 255.) "While a remedial or controllable medical condition is generally not disabling, when a 'claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law.'" *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (quoting *Taylor*

*v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986)).  *See also Belle v. Barnhart*, 129 Fed. Appx. 558 (11th Cir. 2005) ("[I]f one's disability could be cured by certain treatment, yet treatment is not financially available, then a condition which is disabling in fact continues to be disabling in law.").  The court also notes that the medical records do not clearly indicate the extent of improvement with the hearing aids.  *See Seals v. Barnhart*, 308 F.Supp.2d 1241, 1251 (N.D. Ala. 2004) (The "mere possibility that treatment would improve the plaintiff's condition is not sufficient to support a denial of benefits.").

For these reasons, the court concludes that the Commissioner erred as a matter of law, and that the case should be remanded for further proceedings regarding the severity of the plaintiff's hearing loss and its effect on his ability to work. The ALJ must consider every impairment alleged by the plaintiff and determine whether the alleged impairments are sufficiently severe – either singly or in combination – to create a disability. *See Gibson v. Heckler,* 779 F.2d 619, 623 (11th Cir. 1986).  In light of the ALJ's failure to fully and fairly consider the evidence in the record of the plaintiff's hearing loss, the court concludes that the ALJ failed to meet his burden in this regard.  As a result of his failure to consider the plaintiff's hearing loss as a severe impairment, doubt is necessarily cast upon the ALJ's conclusion that the plaintiff is not disabled.

This court also concludes that the ALJ failed to resolve inconsistencies in the record regarding Senn's memory loss and concentration problems.  The ALJ relies on the findings of Dr. Saeeda Malik, a neurologist, when concluding that Senn has the residual functional capacity to perform light work.  The ALJ bases this conclusion on Dr. Malik's findings

during a mental status exam on September 19, 2011 that "claimant exhibited good fund of knowledge and proper attention and concentration" and "unremarkable follow-up visits with a treating neurologist." (R. 31-32.) The ALJ, however, fails to reconcile this finding with Dr. Malik's notes during the same evaluation that Senn "appears confused," that his "concentration is poor," and that a "14-system evaluation is remarkable for headache, confusion, and memory impairment." (R. 580-81.) He also fails to reconcile this finding with Dr. Malik's notes during follow-up visits on September 28, 2011, and October 12, 2011 indicating Senn's "attention and concentration span is poor" and a "14-system evaluation is remarkable for headache, confusion [and] memory impairment." (R. 576-78.) When there is a conflict, inconsistency, or ambiguity in the record, the ALJ has an obligation to resolve the conflict, giving specific reasons supported by the evidence as to why he accepted or rejected an opinion regarding the plaintiff's capacity for work. When relying on Dr. Malik's notation that the mental status exam indicated Senn has a good fund of knowledge and proper concentration as a basis for concluding Senn is able to perform light work, the ALJ failed to reconcile this determination with Dr. Malik's findings that Senn appears to suffer from confusion, memory loss, and poor concentration. The ALJ is not free to simply ignore medical evidence, nor may he pick and choose between the records selecting those portions which support his ultimate conclusion without articulating specific, well supported reasons for crediting some evidence while discrediting other evidence. *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992). On remand, the court suggests that the ALJ resolve inconsistencies in the medical evidence regarding Senn's memory loss.

## V. Conclusion

Accordingly, this case will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.

Done this 31st day of July, 2013.

          /s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE